KNOWLES (UNITED STATES v.). See Case No. 15,540.

---

## Case No. 7,901.

### KNOWLTON v. BOSS.

[1 Spr. 163; [1] 12 Law Rep. 13.]

District Court, D. Massachusetts. Dec. Term, 1848.

SEAMEN'S WAGES — DAMAGES FOR MALTREATMENT — RIGHT TO SEE CONSUL— RIGHT OF SEAMEN TO LEAVE SHIP— PRACTICE IN ADMIRALTY — JOINDER OF CLAIMS.

1. Where the crew of a vessel had been wantonly treated with great harshness and severity, on a passage from Boston to a foreign port, and one of them, after arriving at such port, was, without cause, severely beaten by the mate, and he, thereupon, appealed to the master, claiming to see the American consul, and refusing to serve longer under the mate: Held, that the seaman had the right to lay his complaint before the consul, and that the master had no right to require him to return immediately, and unconditionally, to duty under the mate.

2. The master having punished the seaman for refusing so to return, and giving no assurance that the mate should be discharged: Held, that the seaman had a right to leave the service of the ship, and to recover his wages, up to the time of his reaching Boston by another vessel; and also damages for the punishment, and the refusal of permission to see the consul.

[Cited in Coffin v. Weld, Case No. 2,953.]
[Cited in Wilson v. Borstel, 73 Me. 277.]

3. A claim for personal damages cannot be included in the same libel with a claim for the fine, recoverable under St. 1840, c. 48 [5 Stat. 396].

This was a libel in the admiralty, by [James J. Knowlton] a carpenter of a merchant ship, against the master [R. P. Boss]. The allegations were, that the master flogged and imprisoned the libellant, without sufficient cause; refused him leave to see the American consul, when reasonably demanded; and compelled him to leave the vessel, whereby he lost his wages for the return voyage. Besides damages, the libel claimed the fine of $100, imposed by the act of 1840, c. 48, § 19.

R. H. Dana, Jr., for libellant.
John P. Putnam, for respondent.

SPRAGUE, District Judge. [This case is peculiar, not only on account of the principles involved, but because there is no important conflict in the testimony, and because both parties intended, in the main, as it seems to me, to do their duty.] [2]

The respondent was master, and the libel-

lant carpenter, of the ship Edward Everett, on a voyage from Boston to Valparaiso and back. The respondent personally treated his crew well. The libellant performed his duty faithfully, and bore, with commendable patience, much ill treatment from the mate. Crosby, the mate, was unfit to hold office on board ship. He wantonly treated the crew with great harshness and severity; and before reaching Valparaiso, they very properly appealed to the master, and objected to doing further duty under the mate. The master promised them that Crosby should be discharged, upon their arrival at Valparaiso, and they then returned to duty. It would have been more satisfactory, if Captain Boss had suspended the mate from his office, at least for a while. The day after their arrival at Valparaiso, four of the crew, in a respectful manner, told Captain Boss they could serve no longer under Mr. Crosby. But the captain insisted upon their unconditional return to duty, and, on their refusal, took them ashore and placed them in jail. The libellant did not join in this refusal of duty. Some days afterward, while the master was on shore, the libellant was, without reasonable cause or provocation, severely beaten by the mate.

The next morning, when the captain came on board, the libellant, in a respectful manner, refused to do duty any longer under Mr. Crosby, and demanded to see the American consul. Captain Boss insisted on his unconditional and immediate return to duty, and, upon his refusal, had him tied in the rigging, inflicted upon him twelve lashes, and then kept him in irons twenty-four hours, when the libellant submitted to the requirements of the master, and returned to duty. At this time, the vessel was in port, where were other American vessels, and the consul's house was only about a mile from the ship. There was no exigency requiring immediate performance of duty [on Knowlton's part], [2] no insubordination, or fear of any, from the crew; the libellant's manner was respectful, the mate's treatment of him had been intolerable, and he had good reason to anticipate future violence and outrage. Indeed, the crew could hardly be considered safe in their limbs or lives, under the uncontrolled authority of such an officer. I have no hesitation in saying that, under such circumstances, he had a right to see the consul, and lay his complaint before him. [I do not undertake to say what particular measure for security the consul might or should have taken, but at least a temporary security could have been afforded to the crew, in Capt. Boss's absence, by another officer being placed on board, or in some other way.] [2]

The act of 1840, c. 48, § 16 (5 Stat. 396), provides as follows: "The crew of any vessel shall have the fullest liberty to lay their

[1] [Reported by F. E. Parker, Esq., assisted by Charles Francis Adams, Jr., Esq., and here reprinted by permission.]
[2] [From 12 Law Rep. 13.]

[2] [From 12 Law Rep. 13.]

complaints before the consul, or commercial agent, in any foreign port, and shall in no respect be restrained or hindered therein by the master, or any officer, unless some sufficient and valid objection exist against their landing; in which case, if any mariner desire to see the consul or commercial agent, it shall be the duty of the master to acquaint him with it forthwith; stating the reason why the mariner is not permitted to land, and that he is desired to come on board; whereupon it shall be the duty of such consul or commercial agent to repair on board, and inquire into the causes of the complaint, and to proceed thereon as this act directs."

This gives a seaman the right, not only to see the consul, in a case like the present, but to see him on shore, away from the restraints of the ship, unless some valid objection exists to his landing, which is not pretended in this case. Captain Boss neither permitted the libellant to land, nor alleged a reason why he should not; nor did he acquaint the consul forthwith with the facts, and request him to come on board. The libellant had a right to have a suspension of proceedings [so far as punishment was concerned].[2] The very question was, whether he should be compelled to serve longer under Crosby. Captain Boss undertook to settle this question by an ignominious punishment, and then to send for the consul, if at all, at his leisure. I do not, however, mean to say that an appeal to the consul, in a foreign port, is always to suspend punishment, or a forcible compulsion to duty. Jordan v. Williams [Case No. 7,528]; Shorey v. Rennell [Id. 12,806]. [Still more was Knowlton's right violated by the ignominious punishment he received in the presence of the crew, and with the knowledge of his countrymen in port, which, to a person in his situation, a master mechanic, of a respectable station in life, is matter of serious consequence.][2] Captain Boss does not appear to have acted from any ill will, or evil intention, but from an entire mistake of his own duties and the rights of the crew. He was placed in a trying situation, it being necessary for him to be much on shore, and very difficult to procure a new mate. But, on the other hand, the libellant and the rest of the crew had a right to be protected from ill treatment, and were not bound to continue in the service of the ship, if exposed to outrage and violence from the mate. They had no voice in his appointment, and the master and owners should have borne the loss and inconvenience of a removal of the mate, rather than inflict upon the innocent crew further wrong and injustice, by continuing him in office.

After remaining on board several days, there being no reliable assurance that Cros-

by would be dismissed, the libellant left the vessel and came home, without wages, in another ship. [When he left he was not treated either by the consul or Captain Boss as a deserter, and nearly all the crew had deserted before he left.][2]

I am of opinion that the punishment inflicted by the master was unjustifiable, as was also his refusal to permit the libellant to go on shore, and lay his complaints before the consul; and that for both these wrongs damages must be awarded. I am further of opinion, that the libellant was well warranted in leaving the service of the ship, being compelled thereto by the well-grounded apprehension of continued ill treatment (Steele v. Thacher [Case No. 13,348]), and that he is entitled to full wages up to the time of his return to Boston.

The libel also claims the fine imposed by the 19th section of the above-named act. This section says, that if the master shall refuse to perform the duties imposed by the act, or shall violate its provisions, "he shall be liable to each and every individual injured thereby, in damages, and shall, in addition thereto, be liable to pay a fine of $100 for each and every offence, to be recovered by any person suing therefor, in any court of the United States, in the district where such delinquent may reside or be found."

This penalty is given to any person suing therefor. If the seaman himself sue for it, it can be only as a common informer, and such suit, and a claim for damages, cannot be joined in the same libel. Whether this penalty may be sued for in the admiralty, or only at common law, I have no occasion to consider; I would merely remark that the cases adduced by the counsel for the libellant, are not analogous. The penalty of double wages for short provisions, may be recovered in admiralty, but they are given to the seaman himself, as wages; and are made recoverable by statute, "in the same manner as their stipulated wages." The payment of two months' additional wages for discharge in a foreign port, under the act of 1803, is enforced in admiralty; but this is given specifically as wages, is recoverable only by the mariner himself, and is, in fact, a kind of statute extension of his original contract. No case has been cited of a fine recovered in admiralty, which was given specifically as a fine, to be recovered by any person suing therefor. [But if this fine is recoverable in admiralty, there is an objection to the libellant's uniting in one libel a claim for personal damages with a claim for a fine which he sues for in a different capacity, that of a common informer.][2] The decree must be confined to damages. [Decree for one hundred and fifty dollars damages and costs.][2]

---

[2] [From 12 Law Rep. 13.]

[2] [From 12 Law Rep. 13.]